UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00242-MR

| | |
|---|---|
| JAMES LEWIS SANFORD, ) ) Petitioner, ) ) vs. ) ) UNITED STATES OF ) AMERICA, et al., ) ) Respondents. ) _____ ) | ORDER |

**THIS MATTER** is before the Court on initial review of Petitioner's Pro Se "Application for a Writ of Habeas Corpus under 28 U.S.C. 2241; 28 U.S.C. 2254; and N.C.G.S. Chapter 17" [Doc. 1], and Petitioner's Motion to Proceed in Forma Pauperis [Doc. 4].

**I.   BACKGROUND**

On June 9, 2023, Petitioner James Lewis Sanford ("Petitioner") was arrested in Cleveland County, North Carolina, by the Cleveland County Sheriff's Office for the state crimes of possession of a firearm by a convicted felon, driving under the influence, possession of drug paraphernalia, and having an open container after consuming alcohol. [See Criminal Case 1:23-cr-00051-MR-WCM ("CR"), Doc. 12 at 1]. Petitioner was issued a $15,000.00 secured bond in connection with these charges and was sentenced to a term

of incarceration of 30 days for contempt of court because of Petitioner's behavior before the state judicial officer. [Id.]. Petitioner's contempt sentence was due to be completed on July 8, 2023. [See id.].

On June 21, 2023, a Bill of Indictment was filed in this District charging Petitioner with one count of illegally possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). [CR Doc. 1]. An arrest warrant for Petitioner was issued the same day. [CR Doc. 2]. On June 22, 2023, Homeland Security Investigations (HSI) Special Agent Willie Carswell was given copies of the Indictment and arrest warrant. [CR Doc. 12 at 1]. On June 23, 2023, Agent Carswell served the arrest warrant on Petitioner at the Cleveland County Detention Center. Although Petitioner was serving his state contempt sentence and was still under a secured state bond at the time, deputies at the Cleveland County Detention Center released Petitioner to Agent Carswell. [Id. at 1-2]. Agent Carswell then moved Petitioner to the Buncombe County Detention Center (BCDC) in anticipation of his initial appearance in federal court. [Id. at 2].

The same day, the Government filed a Petition for Writ of Habeas Corpus Ad Prosequendum, which stated that Petitioner was presently detained in the BCDC and asked that a writ be issued for his appearance before this Court. [CR Doc. 3]. The Petition was granted, and a Writ was

issued on June 26, 2023. [CR Doc. 4]. On June 27, 2023, a statement from the United States Marshal's Service (USMS) was filed stating that the Writ was being returned unexecuted and was invalid since HSI had arrested Petitioner on the federal warrant on June 23, 2023. [CR Doc. 5].

On June 28, 2023, federal agents delivered Petitioner to the USMS for his initial appearance on the Indictment, which was conducted that day. The Court granted Petitioner's motion for appointment of counsel and the Government's motion for pretrial detention. Petitioner was, therefore, detained pending his arraignment and a detention hearing, which were scheduled for July 3, 2023.

On July 3, 2023, rather than proceed with Petitioner's arraignment and detention and given the lack of clarity over Petitioner's federal custodial status, the Court set an expedited briefing schedule on the issue of Petitioner's status and set a hearing for July 7, 2023, to address all three matters. On July 5, 2023, the Government filed its brief regarding detention, along with a new Petition for Writ of Habeas Corpus Ad Prosequendum, and Petitioner's attorney filed a response the next day. [CR Docs. 12-14].

On July 7, 2023, the Court conducted a hearing on Petitioner's federal custody status, followed by an arraignment and a detention hearing. Both parties agreed, albeit for different reasons, that Petitioner was in lawful

3

federal custody. The Government argued that Petitioner is lawfully in federal custody simply by the state's voluntary release of Petitioner on the arrest warrant [CR Doc. 20 at 4-7: Hearing Tr.], while Petitioner argued that the arrest warrant constituted a detainer under the Interstate Agreement on Detainers Act (IADA) [Id. at 14-15], and failing that, he is lawfully in federal custody under the Supremacy Clause because "no North Carolina judge could compel the United States to return him to … jail" [Id. at 16]. Because the parties agreed that Petitioner was properly in federal custody, the Magistrate Judge conducted Petitioner's arraignment and detention hearing, ordering Petitioner detained. [See id. at 26-59; CR Doc. 17]. On July 15, 2023, Petitioner appealed the detention order [CR Doc. 19] and that appeal remains pending.

On July 31, 2023, Petitioner filed a pro se "Application for Habeas Corpus Writ Habeas Corpus Federal" in his criminal proceeding, asserting largely the same arguments as in the instant petition, as discussed below. [See CR Doc. 24]. For relief, Petitioner sought "habeas corpus," dismissal of all charges, "remand bond," "$2,500.00 from each official who had knowledge of improper writ," and a new attorney. [Id. at 15]. The Magistrate Judge denied Petitioner's improper pro se request under Local Criminal Rule 47.1(g) and directed that a notice of inquiry of counsel hearing be set. [CR

Doc. 25]. On August 8, 2023, after a status of counsel hearing the day before, the Magistrate Judge denied Petitioner's request for new counsel. [CR Doc. 28]. Petitioner's criminal trial is currently set for November 6, 2023. [CR Doc. 33].

Now pending is Petitioner's pro se "Application for a Writ of Habeas Corpus under 28 U.S.C. 2241; 28 U.S.C. 2254; and N.C.G.S. Chapter 17."[1] [Doc. 1]. In his petition, Petitioner recounts in detail the factual predicate to and events surrounding his arrest in Cleveland County on June 9, 2023, including arresting officer Sumner's conduct relative thereto and Petitioner's interaction with the state magistrate judge leading to the contempt finding. [See id. at 1-9]. Petitioner also details the events of June 23, 2023, when he was moved from the Cleveland County Jail and taken into federal custody by Agent Carswell and transferred to the BCDC. [Id. at 11]. Petitioner asserts that he is not legally in federal custody and that his "issue on this case was ineffective assistance of counsel … because his Attorney was ill prepared not having any case law to challenge the illegal [federal] custody." [Id. at 13]. Petitioner states that "his Attorney stated [Petitioner] was in legal custody due to the Interstate Agreement on Detainers Act." [Id. 13-14].

---

[1] Section 17 of the N.C. Constitution, which prohibits slavery and "[i]nvoluntary servitude, except as punishment for crime whereof the parties have been adjudged guilty," affords Petitioner no relief here and will not be considered further.

Petitioner claims that he "demanded that his lawyer not tell the Court he was in legal custody and to please move the Court for Habeas Corpus … and his lawyer refused." [Id. at 14].

Petitioner argues that his Fourteenth Amendment due process rights were violated because he was transferred to federal custody without a writ. [Doc. 1 at 15-16]. Petitioner also contends that his rights were violated on July 7, 2023, when Officer Sumner lied during Petitioner's detention hearing. [Id. at 17-20]. Petitioner argues that his Eighth and Fourteenth Amendment rights were violated because "[t]he way the officers and nurses took the Petitioners blood [to test his blood alcohol level] amount[ed] to excessive force, violated due process, and was inhumane." [Id. at 20]. Plaintiff challenges that he "was charged with drug paraphernalia due to a scale that was found in a car [that] he did not own … [and] the scale was never tested for narcotics." [Id. at 21]. Petitioner claims that his Fourth and Fifth Amendment rights were violated by Officer Sumner failing to read Petitioner his <u>Miranda</u> rights. [Id. at 21]. Finally, Petitioner claims that he has received ineffective assistance of counsel in violation of the Sixth Amendment, presumably relative to his federal criminal proceedings. [Id. at 21-22]. For relief, Petitioner seeks "dismissal of all charges" (presumably state and federal), grant of habeas corpus and release from custody, appointment of

new counsel, and a hearing. [Id. at 22].

Based on the information provided by Petitioner, the Court is satisfied that Petitioner is without currently available funds to pay the filing fee in this matter. [See Docs. 4, 5]. The Court, therefore, will grant Petitioner's motion to proceed in forma pauperis for the purpose of this review.

## II. STANDARD OF REVIEW

Rule 4 of the Rules Governing Section 2254 Proceedings provides that courts are to promptly examine habeas petitions to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the habeas petition can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

A federal habeas petitioner who is "in custody pursuant to the judgment of a State court," may seek relief pursuant to Title 28, Section 2254(a). A pretrial detainee, however, is not "in custody" pursuant to a state court judgment. Relief under § 2254, therefore is not available. See Dickerson v. Louisiana, 816 F.2d 220 (5th Cir. 1987). A state pretrial detainee's exclusive federal remedy for alleged unconstitutional confinement is to file a petition

7

Case 1:23-cv-00242-MR   Document 6   Filed 09/25/23   Page 7 of 13

for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3), but only after fully exhausting the available state remedies.[2] See 28 U.S.C. § 2241(c)(3); Thomas v. Crosby, 371 F.3d 782, 786 (11th Cir. 2004). A federal pretrial detainee may also file a habeas corpus petition pursuant to § 2241 in certain situations to test the legality of his detention. See United v. Tootle, 65 F.3d 381, 383 (4th Cir. 1995).[3]

The "essence of habeas corpus" is "an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827 (1973). In other words, the function of a habeas petition is to challenge "the very fact or duration of [the petitioner's] physical

---

[2] To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state courts such that the courts have the fair "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270, 275-77 (1971); see O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (in order to properly exhaust state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

[3] Typically, to be eligible for such relief, a federal pretrial detainee must first exhaust other available remedies, particularly those available under 18 U.S.C. § 3145, which regards detention-related appeal rights. See e.g., United States v. Addonizio, 442 U.S. 178, 184 n. 10 (1979) (noting that "the writ of habeas corpus should not do service for an appeal"); Fassler v. United States, 858 F.2d 1016, 1018-19 (5th Cir. 1998) (per curiam) (noting that, absent unique circumstances, a defendant cannot use § 2241 to challenge a pretrial detention order than can be challenged under 18 U.S.C. § 3145). Here, while Petitioner's detention order appeal remains pending, the petition before the Court now does not per se challenge the Magistrate Judge's order detaining Petitioner pending disposition of his federal criminal charge, but rather Petitioner's federal physical custody in the first instance.

imprisonment, and the relief that [the petitioner] seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment…." Id. at 500, 93 S.Ct. 1827. Thus, a § 2241 petition is appropriate where the prisoner challenges the fact or length of his confinement, but generally not the conditions of that confinement. Feather-Gorbey v. Warden, FCI Beckley, No. 5:21-00367, 2021 WL 5412294, at *2 (S.D.W. Va. Oct. 21, 2021) (citing Preiser, 411 U.S. at 499-500; Alaj v. Smith, 108 Fed. App'x 743, 744 (4th Cir. 2004)).

"It is the nature of the substantive legal claim itself and the pertinent factual allegations – in addition to the relief sought – that determines whether the claim challenges 'the validity of confinement' and thus sounds in habeas corpus." Hallinan v. Scarantino, 466 F.Supp.3d 587, 602 (E.D.N.C. June 11, 2020) (citing Hill v. McDonough, 547 U.S. 573, 579-81, 126 S.Ct. 2096 (2006)).

Petitioner here challenges the legality of his current federal custody and certain aspects of his state criminal arrest and charges, and he claims ineffective assistance of counsel in his federal criminal case. For relief, he seeks dismissal of all his state and federal charges, release from custody, and appointment of new counsel in his federal case. As such, the facts and claims alleged and relief sought implicate, at least in part, 28 U.S.C. §§ 2241

and 2254 and 42 U.S.C. § 1983. None of those provisions, however, afford Petitioner any relief here.

An ad prosequendum writ "is issued by a federal court and requires the immediate presence of the defendant named in the writ." United States v. Booher, 752 F.2d 105, 106 (4th Cir. 1985). "Conversely, a detainer may be prepared by a prosecutor or law enforcement officer and simply puts prison officials on notice that charges are pending against an individual. The … sending state can refuse to transfer an individual sought under a detainer but cannot do so if a writ is filed." Id. The writ itself, however, does not effect a transfer of custody. Rather, a writ of habeas corpus ad prosequendum is a court order demanding that an inmate be produced to face criminal charges. United States v. Evans, 159 F.3d 908, 911 (4th Cir. 1998) (citation omitted). When a prisoner is transferred from a state court to the physical custody of federal authorities through such writ, he is merely "on loan" to them and his legal custody remains with the state. See Stewart v. Bailey, 7 F.3d 384, 390 (4th Cir. 1993). Although common practice would have been for Petitioner to be released to physical federal custody on presentation of an ad prosequendum writ, the state voluntary released Petitioner to federal custody when presented with a proper arrest warrant. Whether the arrest warrant constituted a detainer under the IADA or the arrest warrant itself was

sufficient, while relevant to whether the IADA's anti-shuttling provision is implicated, the fact remains that Petitioner is now in lawful federal custody on his pending § 922(g) charge. Under present circumstances, dismissal of his charges and release from custody are not appropriate or available remedies. If circumstances warrant, Petitioner may later seek to argue under federal habeas corpus law that the state waived Petitioner's obligation to serve his remaining state contempt sentence by transferring him to federal physical custody. See White v. Kelly, 82 F.Supp.2d 1184, 1188 (D. Col. Jan. 7, 2000).

Next, as noted, because a pretrial detainee is not "in custody" pursuant to a state court judgment, relief under § 2254 is not available. See Dickerson v. Louisiana, 816 F.2d 220 (5th Cir. 1987). Because Petitioner is a pretrial detainee in both his pending state and federal criminal proceedings, § 2254 affords Petitioner no relief here.

To the extent Petitioner complains about the violation of his civil rights relative to his state criminal arrest, such claims may arise under 42 U.S.C. § 1983. It appears, however, that such claims are currently prohibited by the Younger abstention doctrine[4] and, if Petitioner is convicted on his state

---

[4] The Supreme Court held in Younger v. Harris that a federal court should not interfere with state criminal proceedings except in the most narrow and extraordinary of circumstances. 401 U.S. 37, 43-44 (1971). Under the Younger abstention doctrine,

charges, may be barred by Heck v. Humphrey, 512 U.S. 477 (1994).[5] Moreover, if Petitioner wishes to pursue a § 1983 action, he must comply with the Prison Litigation Reform Act (PLRA). "The PLRA applies to all prisoner civil actions challenging conditions of confinement, and imposes strict requirements regarding filing fees, administrative exhaustion, and carefully crafted restrictions on injunctive relief." Hallinan v. Scarantino, 466 F.Supp.3d 587, 603 (E.D.N.C. June 11, 2020). The Court, therefore, declines to construe Petitioner's petition as a § 1983 Complaint.

Finally, to the extent Petitioner still wants new counsel appointed in his federal criminal case, he may request that his attorney move for inquiry of status of counsel in those proceedings. Petitioner may later seek relief for

---

abstention is proper in federal court when (1) there is an ongoing state court proceeding; (2) the proceeding implicates important state interests; and (3) the plaintiff has an adequate opportunity to present the federal claims in the state proceeding. Emp'rs Res. Mgmt. Co. v. Shannon, 65 F.3d 1126, 1134 (4th Cir. 1995).

[5] In Heck, the Supreme Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. 512 U.S. at 486-87.

ineffective assistance of counsel on direct appeal or under 28 U.S.C. § 2255 as appropriate.

For the foregoing reasons, the Court will dismiss Petitioner's petition without prejudice to Petitioner seeking the proper relief according to the guidance above, if at all.

## IV. CONCLUSION

For the reasons stated herein, Petitioner's petition is denied and dismissed without prejudice in accordance with the terms of this Order.

### ORDER

**IT IS THEREFORE ORDERED** that Petitioner's Application for a Writ of Habeas Corpus under 28 U.S.C. 2241; 28 U.S.C. 2254; and N.C.G.S. Chapter 17 [Doc. 1] is **DENIED** and **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Proceed in Forma Pauperis [Doc. 4] is **GRANTED**.

The Clerk is directed to terminate this action.

**IT IS SO ORDERED**.

Signed: September 23, 2023

Martin Reidinger
Chief United States District Judge